UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:18-cv-332-MOC-DSC

| | | |
|---|---|---|
| **THOMPSON INDUSTRIAL SERVICES, LLC,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| Vs. | ) | ORDER |
| | ) | |
| **ANDY HAGGENMAKER,** | ) | |
| | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the court on plaintiff's Motion for Preliminary Injunction (#5). Having considered plaintiff's motion and reviewed the pleadings, the court enters the following Order.

## I.   Background

Defendant is a former employee of plaintiff, a limited liability company that provides industrial cleaning and maintenance services across the southeastern United States. Defendant was originally hired as a site Superintendent in 2010 and was employed until March 11, 2018 in a variety of positions. Plaintiff promoted defendant to the position of Site Manager on August 25, 2015; in exchange for this promotion, defendant signed an Employment Agreement ("the Agreement") which included a covenant not to compete and an employee non-solicitation provision. In January 2018, defendant was again promoted to General Manager, where he performed similar duties as before but also solicited work from plaintiff's clients and served as a client contact for multiple clients of plaintiff.

On February 28, 2018, defendant gave notice of intent to leave plaintiff; his last day with plaintiff was March 11, 2018. Within two weeks of leaving employment with plaintiff, defendant began working for Hill Services, Inc. ("Hill") in a similar capacity. On May 11, 2018, after learning of defendant's new employment, plaintiff sent defendant and Hill a cease-and-desist letter to remind defendant of his non-compete and non-solicitation requirements. However, plaintiff did not believe that defendant's actions changed as a result of the letter and filed the instant lawsuit on June 11, 2018.

In their Motion for Preliminary Injunction (#5), plaintiff seeks a preliminary injunction enjoining defendant from (1) using, disclosing, disseminating or transmitting for any purpose, including the solicitation of plaintiff's customers, plaintiff's proprietary and confidential information; (2) any activity in violation of Sections 5, 6, and 7 of the Agreement, including soliciting, accepting business from and interfering with plaintiff's customers for a period of twelve months; and (3) otherwise violating the Agreement. Defendant filed a Response (#12) to plaintiff's motion and both sides presented arguments in a hearing on July 19, 2018. The court will now determine whether a preliminary injunction is necessary.

**II.     Legal Standard**

Whether to grant injunctive relief is within the sound discretion of the district court. See Hughes Network Sys. V. InterDigital Commc'ns Corp., 17 F.3d 691, 693 (4th Cir. 1994). However, granting a preliminary injunction "requires that a district court, acting on an incomplete record, order a party to act, or refrain from acting, in a certain way. The danger of a mistake in this setting is substantial." Scotts Co. v. United Indus. Corp., 315 F.3d 264, 284 (4th Cir. 2002) (citations and internal quotations omitted). Consequently, a preliminary injunction is "an extraordinary remedy

. . . which is to be applied 'only in [the] limited circumstances' which clearly demand it." <u>Direx Israel, Ltd. V. Breakthrough Med. Corp.</u>, 952 F.2d 802, 811 (4th Cir. 1992) (quoting <u>Instant Air Freight Co. v. C.F. Air Freight, Inc.</u>, 882 F.2d 797, 800 (3rd Cir. 1989)). The injunction must "be tailored to restrain no more than what is reasonably required to accomplish its ends." <u>Consolidation Coal Co. v. Disabled Miners of S.W. Va.</u>, 442 F.2d 1261, 1267 (4th Cir. 1971).

To secure a preliminary injunction, a party must establish (1) that it is likely to succeed on the merits; (2) that it is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in its favor; and (4) that an injunction is in the public interest. <u>See</u> <u>Winter v. Natural Resources Defense Council, Inc.</u>, 555 U.S. 7 (2008). While a balancing test was previously used, today every preliminary injunction factor must be "satisfied as articulated" and courts "must separately consider each *Winter* factor." <u>Pashby v. Delia</u>, 709 F.3d 307, 320 (4th Cir. 2013) (citing <u>The Real Truth About Obama, Inc. v. FEC</u>, 575 F.3d 342, 347 (4th Cir. 2009)).

### III. Discussion

*a. Likelihood of success on the merits*

In determining whether the Agreement and its restrictive covenants are valid, a restrictive covenant between an employer and an employee is valid and enforceable under North Carolina law if it is: "(1) in writing; (2) reasonable as to terms, time, and territory (3) made part of the employment contract; (4) based on valuable consideration; and (5) not against public policy." <u>Triangle Leasing Co., Inc. v. McMahon</u>, 327 N.C. 224, 228 (1990); <u>United Labs., Inc. v. Kuykendall</u>, 322 N.C. 643, 649-50 (1988). A restrictive covenant must also "be no wider in

scope than is necessary" to protect the legitimate business interests of the employer. Med. Staffing Network, Inc. v. Ridgway, 194 N.C. App. 649, 656 (2009).

Here, it is uncontested that the Agreement was in writing and the non-compete and non-solicitation provisions were made part of the Agreement. Plaintiff has also shown that valuable consideration was involved, as in exchange for the Agreement, defendant received a promotion, a raise in excess of $20,000, and became eligible for a new bonus structure. Such consideration is sufficient. See Clyde Rudd & Assoc, Inc. v. Taylor, 29 N.C. App. 679 (1976) (holding that consideration was present when a non-compete agreement was entered into in exchange for advancement of employment and change in compensation). The Agreement also explicitly contains an explanation that its provisions are necessary to protect plaintiff's legitimate business interests, confidential information, and other assets, and notes that defendant's duties would involve serving as a client liaison and contact and otherwise involved important customer relationships. "[P]rotection of customer relations and goodwill against misappropriation is well recognized as a legitimate protectable interest of the employer." Kuykendall, 322 N.C. at 651; see also A.E.P. Indus., Inc. v. McClure, 308 N.C. 393, 408 (1983). As such, the court does not believe the Agreement's restrictive covenants are against public policy.

The court has also considered whether the non-compete and non-solicitation provisions are reasonable as to terms, time, and territory. North Carolina courts consider "the time and geographic limitations of a covenant not to compete . . . in tandem." Okuma Am. Corp. v. Bowers, 181 N.C. App. 85, 89 (2007) (citation omitted). Here, defendant is restricted for one year from engaging in industrial cleaning services work for customers he worked for in areas where he was previously assigned to work for plaintiff in the last twelve months of his

employment. North Carolina courts have recognized much longer and far-reaching covenants than this, and the court finds the Agreement's restrictive covenants to be reasonable. See Hartman v. W.H. Odell & Assoc., 117 N.C. App. 307, 315 (1994) (noting that our Supreme Court has recognized that, under certain circumstances, a five-year covenant may be reasonable); Okuma, 181 N.C. App. at 89 (upholding restriction covering North and South America); see also Kennedy v. Kennedy, 160 N.C. App. 1, 10 (2003); Lloyd v. Southern Elevator Co., 2007 N.C. App. LEXIS 1453 (N.C. Ct. App. 2007).

Defendant argues that plaintiff orally modified the Agreement to void the restrictive covenants, despite the Agreement's provision against oral modification. He avers in his affidavit (#12-1) that plaintiff's president told him not to worry about the restrictive covenants and that plaintiff would not enforce them. Plaintiff counters with an affidavit from their president, where he states that he never told defendant the covenants were voided. Defendant contends that, under North Carolina law, such an oral modification is valid "even though the instrument involved provides that only written modifications shall be binding." Son-Shine Grading, Inc. v. ADC Const. Co., 68 N.C. App. 417, 422 (1984) (citation omitted).

However, in Nixon Associates, LLC v. Brown, 238 N.C. App. 363 (2014), the North Carolina Court of Appeals limited the holding in Son-Shine Grading, explaining that while it recognized the ability to modify a written contract by parol agreement, "we have not done so where, as here, the original contract was subject to the statute of frauds." Nixon, 238 N.C. App. at 363. A non-compete agreement is certainly subject to a statute of frauds, as N.C. Gen. Stat. § 75-4 requires contracts or agreements that include non-competes to be in writing. See Vanwyk Textile Systems, B.V. v. Zimmer Machinery America, Inc., 994 F. Supp. 350, 389 (W.D.N.C.

1997) (McKnight, M.J., noting that N.C. Gen. Stat. § 75-4 functions as North Carolina's statute of frauds for employment agreements, and specifically for non-competes).

Without reaching the issue of credibility created by the competing affidavits -- which cannot, in any event, be reached on affidavits -- the court cannot agree with defendant's legal argument when Nixon and Vanwyk are considered. As such, any oral modification of the Agreement is of no legal significance and cannot be used to void the non-compete and non-solicitation provisions. The court thus finds that the Agreement and its restrictive covenants are valid.

The next factor in determining likelihood of success on the merits is whether that facially valid Agreement was likely breached. See Poor v. Hill, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000). Based on the evidence before the court, the court finds that plaintiff is likely to establish that a breach is occurring. What appears undisputed at this point is that defendant is working for a competitor of plaintiffs, that he is performing essentially the same work he performed for plaintiff, and that such work is being solicited for and done at sites where he worked for plaintiff in his last twelve months of employment. The evidence of such activity appears to be strong and would likely support a finding that defendant's actions are in direct violation of the non-compete and non-solicitation provisions of the Agreement. Accordingly, the court finds that plaintiff is likely to succeed on the merits of its claim against defendant.

    *b. Irreparable harm*

Next, the court considers whether plaintiff is likely to suffer irreparable harm from defendant's actions. Plaintiff argues that defendant is wrongfully using confidential information to improperly assist his new employer Hill, and that defendant's actions are tarnishing plaintiff's

image and resulting in loss of goodwill and (potentially) customers. Plaintiff contends that these actions are causing plaintiff irreparable harm and a preliminary injunction is necessary to stop defendant.

Generally, "irreparable injury is suffered when monetary damages are difficult to ascertain or are inadequate." Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co., 22 F.3d 546, 551 (4th Cir. 1994) (citing Danielson v. Local 275, 479 F.2d 1033, 1037 (2d Cir. 1973)). Alternately, irreparable injury is satisfied "when the failure to grant preliminary relief creates the possibility of permanent loss of customers to a competitor or the loss of goodwill." Id. (citing Merrill Lynch, Pierce, Fenner and Smith v. Bradley, 756 F.2d 1048, 1055 (4th Cir. 1985)). However, when "the record indicates that [plaintiff's loss] is a matter of simple mathematic calculation," irreparable injury has not occurred. Id. (citing Graham v. Triangle Pub., 344 F.2d 775, 776 (3d Cir. 1965).

After reviewing the record, the court does not believe plaintiff has satisfied their burden of showing irreparable injury, and that the "extraordinary remedy" of a preliminary injunction is unnecessary at this point. Direx, 952 F.2d at 811. There is minimal evidence that defendant is improperly using any confidential information of plaintiff's in his work for Hill, and at the hearing plaintiff admitted that discovery to this point offered little to support the allegation of misuse of confidential information. Further, even if defendant had improperly disclosed confidential information in his four months of employment with Hill, that harm has already been done; a preliminary injunction would not put the genie back in the bottle. While plaintiff correctly notes that tarnishing of plaintiff's image or permanent loss of customers will satisfy this prong, the record does not suggest either of these things has happened or is a genuine possibility.

Defendant also offered evidence that his interaction with plaintiff's customers has been minimal, and has often been for work that plaintiff chose not to perform for those customers. Defendant avers that has also offered to loan parts and provide other support to plaintiff's employees after leaving to work for Hill. Taken together, it is unclear how defendant's actions can be construed as tarnishing plaintiff's image or costing plaintiff goodwill with potential or current customers.

Defendant's arguments that any financial harm to plaintiff is easily calculated are also compelling to the court, as monetary damages are thus a more appropriate remedy. To the extent plaintiff may be able to show actionable damage, such damage is not "irreparable," since a properly instructed jury could determine the monetary value of any such damage.

A necessary corollary to the compensability of damages is the ability of defendant to pay any award. Clearly, as damages may well range from six- to seven-figures, such damages may be difficult for defendant alone to pay. That perceived inability to pay the award is not a justification for finding irreparable harm, especially where plaintiff has failed to join the defendant's new employer as a necessary party. While plaintiff is certainly the master of its own Complaint, the Court is wary to find irreparable harm based on the inability of a wage-earner defendant to fund a judgment where a deeper pocket is -- as it was at the hearing -- observing from the sidelines. Ultimately, the Court concludes that the alleged injury is not "irreparable injury" as an award of money damages could make plaintiff whole. Whether plaintiff joins the employer, which is apparently profiting from the alleged breach of the Agreement and likely has a deeper pocket than the employee defendant, is up to plaintiff.

    *c.*    *Consideration of the Remaining Factors*

As mentioned out the outset, while a balancing test was previously used, today every preliminary injunction factor must be "satisfied as articulated." <u>Pashby</u>, 709 F.3d at 320. As plaintiff cannot satisfy the second <u>Winter</u> factor, a preliminary injunction must be denied.

## IV. Conclusion

While the Court has determined that plaintiff has made an initial showing of a valid contract and that it will likely prevail in proving that it was breached, the requested preliminary injunction will not issue because the harm shown is reparable through an award of monetary damages. That said, while defendant and his new employer have certainly won today's battle, they have not yet won the war, as the Court has observed a critical weakness in the defense as discussed above. As Rule 56 allows for summary judgment at any time, it is critical for the parties and the likely interested non-party to continue with discussions aimed at amicable resolution. This Court has recently handled other cases nearly identical to this one, albeit in other industries, and observed resolutions that minimized harm to both the employers and the employee by simply moving the employee to another region for the duration of the non-compete. The parties, all of whom are well represented, are encouraged to attempt early resolution of this matter and to return to what they do best, which is the business of making money.

## ORDER

**IT IS, THEREFORE, ORDERED** that plaintiff's Motion for Preliminary Injunction (#5) is **DENIED**.

Signed: July 20, 2018

Max O. Cogburn Jr.
United States District Judge